## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

CURTIS L. BERRY,             )
          Plaintiff,      )
                        )        Case. No _____
vs.                      )
                        )        JURY TRIAL DEMANDED
AIRXCEL, INC and.      )
RV PRODUCTS, Inc.     )        **COMPLAINT**
          Defendants.    )
_____ )

COMES NOW the Plaintiff, Curtis L. Berry, by and through his undersigned attorney, Martin J. Keenan of Martin J. Keenan, LLC, and hereby files this Complaint against AIRXCEL, INC. and RV PRODUCTS, INC. and states and alleges as follows:

### I. NATURE OF THE ACTION

This is action under 42 U.S.C. §1983 Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, Title I of the Civil Rights Act of 1991 and the Kansas Act Against Discrimination (KS Stat. Sec. 44-1001 *et seq.)*, alleging violations of Curtis Berry's constitutional and civil rights. Plaintiff was discriminated against, in part, because of his age, 61. His dismissal and unfair treatment at work before his dismissal were based on his age. At all times pertinent, Defendants were subject to Discrimination in Employment Act of 1967, as codified, 29 U.S.C. section 621-634.

Curtis L. Berry was also subjected to a hostile work environment based upon his race, Arican-American, insofar as representatives of Defendants treated him unfairly compared to similarly situated employees regarding the terms and conditions of his employment based on race, as he is an African-American.

Curtis L. Berry was subjected to a hostile work environment based upon his sex where a manager of Defendant made repeated unwanted sexual batteries against Plaintiff and repeatedly directed unwanted sexual comments toward Plaintiff and discriminated against him regarding the terms and conditions of his employment based on sex, as he is a male, and retaliated against him for complaining to him about said unwanted sexual advances and comments.

Finally, Plaintiff frequently brought to the attention of the Defendants violations of law and company policy that victimized him and other employees. Plaintiff's reporting of said legal violations led to retaliation, and his ultimate discharge on  April 13,  2020.

## II. JURISDICTION AND VENUE

1.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. §1331 and 1343 and 42 USC §2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964 and regulations. The Court has pendent claim jurisdiction under 28 USC §1376 (a).

2.      At all times pertinent, Defendants were subject to Discrimination in Employment Act of 1967, as codified, 29 U.S.C. section 621-634.

3.      Venue is appropriate in this District under USC §1391 (b) and (c).  This District possesses venue of this matter pursuant to 42 USC §2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action exceeds the jurisdictional limits of this Court.

4.      Plaintiff complained to his employer about the hostile work environment discrimination based on his age, race, and sex, and suffered retaliation based on his making the

Defendendants aware of violations of law. Plaintiff also brought to Defendant's attention violations of law against his fellow employees. This led to retaliation which violates Kansas public policy. Palmer vs. Brown, 752 P.2nd 690 (Kan. 1988).

## III. PARTIES

5.      Plaintiff is a resident of Sedgwick County, Kansas, is an African-American, age 61, a male, and was employed by the Defendants for over 38 years. At all times relevant he was a resident of Sedgwick County.

6.      Airxcel, Inc. is a Delaware Corporation registered to do business in Kansas. It's registered agent for service of process is Melvin L. Adams, 3050 St. Francis, Wichita KS 67219.

7.      RV Products, Inc. is a forfeited company, formed in Kansas and the resident agent is Harold Perry at 204 S. Parkdale, Wichita, KS 67209. It appears that RV Products, Inc. no longer exists and that the only Defendant should be Airxcel, Inc, but because Plaintiff worked for the RV Products subdivision of Airxcel, Inc, the name RV Products is listed in this lawsuit out of an abundance of caution.

8.      At all times pertinent, Plaintiff's employer Airxcel, Inc and RV Products was subject to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S. Section 2000 et seq. and including any federal and state statutes dealing with hostile work environment, race discrimination, age discriminatation, and retaliation for reporting violations of the law to Defendant.

9.      At all times pertinent, Defendants were subject to Discrimination in Employment Act of 1967, as codified, 29 U.S.C. section 621-634.

## IV. ADMINISTRATIVE REMEDIES

10.     The Equal Employment Opportunity Commission (EEOC) investigated this and granted Curtis a "right to sue" letter, mailed to him on September 30, 2020, EEOC Charge #563-2020-02416. Furthermore, on December 10, 2020 Plaintiff received a "right to sue" letter from the Kansas Human Rights Commission. Plaintiff has exhausted his administrative remedies.  When Plaintiff spoke with EEOC representatives to fill out his EEOC complaint, the EEOC representative refused to listen to anything that happened that was more than 300 days before the date of the complaint. As a result, the sexual battery and hostile sexual environment allegation was not made in the EEOC complaint. Likewise, in the demand letter to Defendant by Plaintiff's attorney, this was not included, as Plaintiff, a heterosexual, was embarassed to reveal that he was sexually harassed by another male until days before the lawsuit was filed. Even though certain wrongful actions occurred before 300 days from the date of Plaintiff's EEOC complaint, the actions of Defendants was part of a pattern or practice which started before the 300 day claw back of the EEOC.

## V.  FACTS

11.     Plaintiff began working for Defendants in 1981. Plaintiff worked for the company for almost 39 years. He was a satisfactory employee, or he would not have been at the company so long. His past evaluations were good, and he received raises in keeping with his good employment record. Rob Leach became President of Airxcel, Inc in the fall of 2015. Rob Leach had been Vice President of Operations, occupying a particular office space at the factory. When he became President of Airxcel/RV Products, he took the physical office of former President Guinn.

12.     The job of Vice President of Operations was left vacant from the fall of 2015 until the fall of 2016. During the time of said vacancy, manager Girish Venugopal occupied Leach's former physical office that Leach occupied as Vice-President of Operations. Venugopal believed he was being groomed to become Leach's replacement as Vice-President of Operations. Venugopal was passed over for said promotion in the fall of 2016 in favor of a woman, Sandy Jessop.

13.     When the COVID-19 crisis hit in 2020, local news media reported on April, 20, 2020: "Airxcel Laying Off Hundreds in Wichita." Plaintiff, and a majority of the employees, were furloughed as a part of this COVID-19 slowdown.

14.     The massive furlough of employees was short-lived, because the COVID-19 crisis led to industry growth in the Recreational Vehicle sector. Rather than staying at hotels where they might be exposed to COVID-19, many customers purchased or refurbished their RVs to limit their exposure to COVID-19.

15.     This surge in the popularity of RVs led Defendant to bounce back and end the furloughs and to add new employees. On May 5, 2020, The Wichita Business Journal Reported: "Airxcel fires back up Wichita production plant." A July 17, 2020 article stated: "Airxcel hiring more than 130 in Wichita as RV industry makes a sudden surge." The workers who were furloughed were called back. In fact, the factory was only closed for two weeks and then regained full capacity.  However, Plaintiff, age 61, was not asked to return and received a letter on April 13,  2020 that he was laid off and that the layoff was permanent.

16.     Defendant made clear the reason for Plaintiff's firing: the COVID-19 crisis. This excuse for firing Plaintiff was pretextual. The Defendant consistently communicated to Plaintiff

or his representatives that his dismissal after nearly 39 years was because of the COVID-19 crisis. Said pretext was incoherent, weak, inconsistent and contradictory.

17.     Plaintiff watched as younger workers that he had trained were called back to work. Meanwhile, the company has been hiring young people for jobs for which Plaintiff is qualified.

18.     Plaintiff was an inspector, and in 2016 and 2017. Plaintiff's superior, Manager of Inspection Girish Venugopal, had been moved to the office of Leach and believed he would be named as Leach's replacement as Vice President of Operations.

19.     During this time, up until Sandy Jessop was hired as Vice President of Operations instead of Venugopal, Venugopal, a supervisor, routinely sexually harassed Plaintiff by touching him on the buttocks many times, while commenting that he, Venugopal, wanted to have a "nice ass" like Curtis.  Venugopal grabbed Plaintiff's nipples on many occasion through his shirt and twisted them like he was adjusting dials on a machine. Venugopal touched Plaintiff's pectoral muscles to see if they moved. Venugopal also sat down next to Plaintiff and drew on him with a magic marker, on his face and arm, neck and clothing on many occasions. Venugopal  touched Plaintiff's ears in an unwanted and offensive manner..

20.     All of these actions and statements appeared to be for the sole benefit of Venugopal's own sexual gratification. Plaintiff, a heterosexual, asked Venugopal to stop these unwanted sexual comments and actions, but Venugopal continued them. All of these sexual actions and comments toward Venugopal were uninvited and unwanted, and Plaintiff asked the Supervisor Venugopal to stop doing it.

21.     Venugopal applied to become Vice President of Operations at RV Products, but he was passed over and a woman, Sandra Jessop, was hired instead in the fall of 2016. Sandra

Jessop had a good relationship with Plaintiff, and Plaintiff had trained her in his body building business many years earlier. He also trained Venugopal, and Venugopal owed Plaintiff $1,500 dollars for the personal training but did not pay Plaintiff.

22.     Venugopal became irate at Plaintiff when a woman, Sandy Jessop, was hired for the Vice President of Operations instead of him. He blamed Plaintiff for nixing his chances for the job. He knew that Plaintiff and Jessop were longtime friends. Venugopal believed that Plaintiff recommended Sandy Jessop for the promotion and had reported negative things about Venugopal to the hiring committee. It is reasonable to assume to Venugopal believed that Plaintiff reported the sexual harassment to supervisors.

23.     The day Venugopal learned that Jessop was hired, Supervisor Venugopal ceased the sexual harassment of Plaintiff completely. Venugopal, however, then began retaliating against Plaintiff by criticizing his work unfairly, and mocking him by saying: "Curtis, why don't you go tell your girlfriend Sandy Jessop about this!"  Venugopal was openly hostile to Plaintiff in terms of work assignments and criticism. Kirk Gibson, another manager, was also angry at Plaintiff when Jessop got the promotion, and he began mistreating the Plaintiff in concert with Venugopal. Both Girish Venugopal and Kirk Gibson were angry that a woman got the position and treated Plaintiff badly as a result.

24.     Plaintiff was assigned a position as inspector on assembly line #3 in early March 2018. The supervisor of assembly line #3 was Tim Klock. During Plaintiff's time on the assembly line, which was about three weeks, Plaintiff was mistreated by Tim Klock in concert with Giresh Venugopal and Kirk Gibson.  Klock was angry that the workers on the assembly line listened to Curtis, a 38 year veteran, instead of him.  Klock made demeaning comments and actions towards Plaintiff and towards two women on the assembly line. Plaintiff complained to

HR about the hostile work environment created by Venugopal, Kirk Gibson and Tim Klock, but nothing was done. Girish Venugopal would tell the other two men: "Let's go mess with Curtis."

25.     Although the workers were not unionized, many employees were afraid of management, so they would share their concerns with Plaintiff about unsafe or unlawful practices by the company. Due to his experience and personality, employees would routinely ask Plaintiff to advocate for them with HR if the company was doing something illegal or in violation of company policy. One supervisor actually told disgruntled employees to "talk to Curtis," as if Curtis was a Union representative.

26.     Because Plaintiff was in a hostile work environment on the assembly line created by Klock, and Girish Venugopal and Kirk Gibson, Plaintiff was asked to consider moving to the Warehouse to work for Danielle Collins, the assistant manager of the warehouse. In late March of 2018 Plaintiff did go to work in the Warehouse with Danielle Collins.  He was told that he would be treated better than he was being treated on the assembly line.

27.     The company created a new job for Plaintiff in the Warehouse: Inventory Control and Shipping Quality Improvement Worker.  In this new job Plaintiff was required to have a tow motor license to operate forklifts, but Danielle Collins did not let Plaintiff renew his tow motor license.

28.     Shortly after starting his new job in the Warehouse away from the assembly line, Plaintiff's scanner needed to be repaired by the IT Department. Plaintiff secured permission from a superior, Lisa Mitchell, (who was replacing Danielle Collins that day) to walk to the IT department with his scanner to drop it off there to be repaired. After dropping off the scanner, Plaintiff walked back to the Warehouse. Assembly Line #3 was on his path to return to the Warehouse.  He walked near the assembly line #3 enroute to return to his work station.  Even

though Plaintiff no longer worked for Tim Klock, Klock approached Plaintiff in an intimidating fashion and put his hand strongly on Plaintiff's left shoulder as they walked. Plaintiff said: "This isn't the 1960's. You can't treat people this way."  Klock became angry and pushed Plaintiff into a stack of boxes.

29.     After Klock pushed Plaintiff into the boxes, Plaintiff immediately showed Klock an outdated NAACP membership card he removed from his wallet and said that he would file a complaint. However, after the incident, a manager, Rick Hawk, told Plaintiff to keep quiet about the attack  and simply pretend that Plaintiff and Tim Klock were friends. Plaintiff filed a grievance against Klock for using violence against him, but HR blamed Curtis and said: "You need to stay in the Warehouse."

30.     Danielle Collins, Plaintiff's new boss, got a promotion in late summer of 2018 to Senior Manager of the Warehouse.  Collins treated Plaintiff unfairly and continued the type of harassment done earlier by supervisors Klock, Giresh Venugopal and Kirk Gibson.

31.     A decision was apparently made by the company to continue the hostile work environment for Curtis to try to force him to quit. The company wanted to get rid of Curtis due to his age, 61,  his race, African-American, and as retaliation for his speaking to HR about unlawful and unfair practices at the company. Although Giresh Venugopal had left the company, the hostility toward Curtis when Venugopal blamed Curtis for Sandy Jessop getting the promotion continued under Danielle Collins. Collins was a friend and mentee of Jessop and did not have any animus about Jessop getting her promotion, but she engaged in cruel and harassing actions toward Plaintiff to try to get him to quit.

32.     Danielle Collins "picked on" Plaintiff relentlessly in an unfair and discriminatory manner. He was singled out for scrutiny, criticism, surveillance and discipline. Collins often

yelled at Curtis, and once referred to him as "boy," a common racial epithet. He complained about Danielle's treatment of him to those in Human Resources about a dozen times but nothing was done. He complained to company President Leach and also to CFO Debbie Jones. Nothing was done to reign in Collins. Collins "wrote up" Plaintiff many times and these write-ups were pretextual. They were a part of an effort to get Plaintiff to quit, or to justify his firing.

33.     Plaintiff was labelled as a "troublemaker" for simply telling HR about things that were unlawful or unfair to him and other workers. The new management regime apparently considered him a threat to any unlawful practices. The efforts of Danielle Collins, Tim Klock Girish Venugopal and Kirk Gibson were clear attempts to get him to quit.

34.     He was denied raises, given more work than other workers, and was restricted in his movement. This unlawful conduct began in 2016 and continued until his last day on the job. Plaintiff was the lowest paid inspector of any inspector who had been there for 38 years. Plaintiff received a notice that his layoff due to COVID-19 should be considered permanent on April 13, 2020.

35.     Plaintiff remained a common laborer for 38 years. He was never promoted to be a "Lead Person," or a "Supervisor." Above the Supervisors are Managers, and then Vice Presidents and the President. Plaintiff wanted to move up and get a promotion to "Lead Person" or "Supervisor" but was denied promotions. At times that Plaintiff had serious family issues such as the death of his father, when he was told by supervisor Girish Venugopal that he could not carry his phone with him as his father was dying. Plaintiff learned of his father's death via a voicemail in an untimely fashion. Other employees seemed to get flexibility for family emergencies, but Curtis was given no leeway to help his family in dire emergencies.

36.     As an African-American, Plaintiff helped other African-Americans advocate for themselves. J.B. Hunt, an African-American, was an inspector and Curtis thought he deserved to be a Supervisor. Curtis encouraged Hunt to ask for a Supervisor position, and he got one.

37.     The times that Curtis talked directly to the President of Airxcel about his mistreatment, the HR staff told him: "You can talk to President Leach about sports such as KU basketball, but don't talk to him about work."

38.     Plaintiff was a large, muscular black man, and a certified personal trainer. Plaintiff played college football and was strong and fit.  One or more supervisors warned him not to walk around the factory scaring people. Although Plaintiff was gentle and non-violent, there was an assumption that his mere presence frighted people.

39.     The fact that Plaintiff was outspoken with management about violations of law and company policy seemed to make the management uncomfortable. Although they did not say overtly that Curtis should "know his place," a common statement made to blacks, the message he got from the leadership was to be quiet and stay in one place and don't complain. A common complaint by managers was that "The workers listen to Curtis." So they didn't want any employees to talk to him about their woes at work for fear that he would go to HR. The Warehouse job was a way to finally put Plaintiff "in his place."

40.     Danielle Collins monitored Plaintiff on camera like he was a threat, and she limited his freedom of movement. He was not allowed to leave his work area to get a drink of water, and even his bathroom breaks were limited.  A co-worker would bring Curtis water because he was not allowed to leave his work area to get a drink of water.  There were one or more drinking fountains in the area Curtis worked, but the water was not cold. There was a jug of water but it was unclear whether it was sanitary. The Warehouse  was not air-conditioned.  Other

African-American employees, in addition to Curtis, received harder tasks and more dangerous tasks than Caucasian employees, often without proper training.

41.     Other employees were told not to talk to Plaintiff, and Curtis was told not to talk to other employees. Curtis was isolated from his fellow workers.

42.     Plaintiff had planned to finish his career with Defendants. He would have worked at the company at least to the age of 65, or if the company would let him work. He lost his salary, health insurance benefits, and other benefits.  Additionally, it has taken a personal toll on him beyond the financial loss. He has suffered high blood pressure,  and depression due to the actions of the company.

## VI.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## EQUAL PROTECTION VIOLATION ONE

43.     Plaintiff realleges paragraphs 1 to 42 of this Complaint as if fully set forth herein.

44.     Defendant deprived Plaintiff of rights protected by the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by establishing, maintaining or enforcing policies which create or foster age discrimination against older employees. Older employees suffered a hostile work environment, by treating older employees differently than employees under age 40, and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a hostile work environment.

45.     In the alternative, if the acts complained of were not committed by the individual Defendants pursuant to an official policy, practice or custom of Defendants, they were committed by the individual Defendants with the purpose and intent of creating or fostering a hostile work

environment, by treating older workers differently than younger workers and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a hostile work environment toward those over age 40.

46.     The actions toward the Plaintiff occurred in the scope of their employment.

47.     Each individual Defendant's conduct was a proximate cause of damages sustained by Plaintiff.

48.     Each individual Defendant acted with reckless or deliberate indifference to the rights of Plaintiff and with malice.

49.     Plaintiff has been damaged as a result of the individual Defendant's acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter others, for attorney's fees and costs, for interest as allowed by law and for such other and further relief as is just in the premises.

**SECOND CAUSE OF ACTION**

**EQUAL PROTECTION VIOLATION TWO**

50.     Plaintiff realleges paragraphs 1 to 49 of this Complaint as if fully set forth herein.

51.     Defendants, through its agents, servants and employees, in their official capacities, established an official policy, practice or custom of reckless or deliberate indifference to persons in the position of Plaintiff.

52.     Defendants have discriminated against African-Americans by establishing, maintaining and enforcing policies which create or foster a hostile work environment by treating

African-Americans differently than white workers and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a racially hostile work environment.

53.     In the alternative, if the discriminatory practice of establishing, maintaining and enforcing policies which create or foster a racially hostile work environment, by treating blacks differently than whites, and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a racially hostile work environment was not a policy of the Defendants, it was a practice, procedure, or custom which Defendants and its policy makers had actual or constructive knowledge.

54.     Defendant's policy, custom or practice in general and as applied to Plaintiff in particular, was purposeful and intentional.

55.     Defendants deprived Plaintiff of his rights to which he is entitled under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. §1983.

56.     Plaintiff has been damaged as a direct and proximate result of the Defendant's acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for attorney's fees and costs for interest as allowed by law, and for such other and further relief as is just in the premises.

### THIRD CAUSE OF ACTION

### EQUAL PROTECTION VIOLATION THREE

57.     Plaintiff realleges paragraphs 1 to 56 of this Complaint as if fully set forth herein.

58.     Defendants, through its agents, servants and employees, in their official capacities, established an official policy, practice or custom of reckless or deliberate indifference to persons in the position of Plaintiff.

59.     Defendants have discriminated against Plaintiff, a male, by establishing, maintaining and enforcing policies which create or foster a  hostile work environment by treating males differently than females and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment. Defendant had actual or imputed knowledge of supervisor Girish Venugopal's wrongful actions.

60.     In the alternative, if the discriminatory practice of establishing, maintaining and enforcing policies which create or foster a sexually hostile work environment, by treating men differently, and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment was not a policy of the Defendants, it was a practice, procedure, or custom which Defendants and its policy makers had actual or constructive knowledge. The actions of supervisor Girish Venugopal towards Plaintiff in regards to sexual battery and sexual harassment was outrageous and would never have been allowed in a situation in which a man sexually harassed a woman.

61.     Defendant's policy, custom or practice in general and as applied to Plaintiff  in particular, was purposeful and intentional.

62.     Defendants deprived Plaintiff of his rights to which he is entitled under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. §1983.

63.     Plaintiff has been damaged as a direct and proximate result of the Defendant's acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for attorney's fees and costs for interest as allowed by law, and for such other and further relief as is just in the premises.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII,

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

64.     Plaintiff realleges paragraphs 1 to 63 of this Complaint as if fully set forth herein.

65.     Plaintiff was subjected to offensive conduct from his supervisors who created a hostile environment, as Plaintiff's supervisors and superiors were the wrongdoers, having participated in and/or encouraged the harassment or ignored the harassment after Plaintiff's complaints.

66.     Such conduct was based on Plaintiff's age.

67.     The hostile environment affected a term, condition, or privilege or his employment.

68.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages, including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the

circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended., and with the Age Discrimination in Employment Act of 1967.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## RACIAL  DISCRIMINATION

69.     Plaintiff realleges paragraphs 1 to 68 as if fully set forth herein.

70.     Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of his race in violation of the Title VII of the Civil Rights Act of 1964, as Amended by treating him differently than similarly-situation white co-workers.

71.     Plaintiff's race was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

72.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## SEX  DISCRIMINATION

73.     Plaintiff realleges paragraphs 1 to 72 as if fully set forth herein.

74.     Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of his sex in violation of the Title VII of the Civil Rights Act of 1964, as Amended by treating him differently than similarly-situation white co-workers.

75.     Plaintiff's sex was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

76.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## RETALIATION

77.     Plaintiff realleges paragraphs 1 through 76  as if fully set forth herein.

78.     Plaintiff complained to Defendants about the racism, sexism and age discrimination he experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended. Plaintiff also complained to Defendants about violations of other said laws to Defendants.

79.     Defendant retaliated against Plaintiff because of his complaints and opposition to harassment.

80.     Plaintiff's race, sex and gender, and his protected activity were motivating factors in Defendant's retaliation against him.

81.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgement against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended. The wrongful discharge based on his age violates the Civil Rights Act of 1967.


## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## WRONGFUL  DISCHARGE

82.     Plaintiff realleges paragraphs 1 through 81 as if fully set forth herein.

83.     Defendant and/or its agents wrongfully discharged Plaintiff in 2020 based on his age, 61, and his race, African-American, as a result of his age, 61. and as retaliation.

84.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; fear;

anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## NINTH  CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## HOSTILE WORK ENVIRONMENT

85.     Plaintiff realleges paragraphs 1 through 84 as if fully set forth herein.

86.     Plaintiff was subjected to  offensive conduct from his  supervisors employed by the Defendant that created a hostile environment.

87.     Such conduct was based on Plaintiff's age, race and the fact that he brought to light unlawful practices and practices that violated the Defendant's internal policies.

88.     The hostile environment affected a term, condition, or privilege of his employment; and

89.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## RACIAL  DISCRIMINATION

90.     Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

91.     Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of his race in violation of the Title VII of the Civil Rights Act of 1964, as Amended, and the Kansas Act Against Discrimination.

92.     Plaintiff suffered adverse action including, but not limited to termination of employment.

93.     Plaintiff's race was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

94.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future, suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the

circumstances and consistent witht he purpose of the Kansas Act Against Discrimination.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## AGE  DISCRIMINATION

95.     Plaintiff realleges paragraphs 1 through 94 as if fully set forth herein.

96.     Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of his age in violation of the Title VII of the Civil Rights Act of 1964, as Amended, and the Kansas Act Against Discrimination.

97.     Plaintiff suffered adverse action including, but not limited to termination of employment.

98.     Plaintiff's age was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

99.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future, suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent witht he purpose of the Kansas Act Against Discrimination.

**TWELF  CAUSE OF ACTION**

**VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION**

**RETALIATION**

100.    Plaintiff realleges paragraphs 1 through 99 as if fully set forth herein.

101.    Plaintiff complained to Defendant about the age, racial and sex discrimination he experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended. and Kansas Law. He also complained on behalf of many coworkers as to said violations.

102.    Defendant retaliated against Plaintiff because of his complaints and opposition to harassment.

103.    Plaintiff's age, race and and his protected activity were motivating factors in Defendant's retaliation against her.

104.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## THIRTEENTH CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## WRONGFUL DISCHARGE

105.    Plaintiff realleges paragraphs 1 through 99 as if fully set forth herein.

106.    Defendant wrongfully discharged Plaintiff from his employment due to his age, race, sex and as retaliation.

107.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Curtis Berry, respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates of age, race, or retaliation.

B.    Order the Defendant to pay Plaintiff back pay, front pay, compensatory damages, consequential damages and liquidated damages in the amounts to be proven at trial,

and all other affirmative and equitable relief necessary to eradicate the effects of Defendant's unlawful employment practices.

    C. Direct the Defendant to expunge all negative reports in Plaintiff's personnel file.

    D. Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct in an amount to be determined at trial.

    E. Award the Plaintiff his reasonable attorney's fees and expert witness fees.

    F. Award Plaintiff his costs in this action.

    G. Grant such further relief as the Court deems necessary and proper.

## <u>JURY TRIAL DEMAND</u>

The Plaintiff requests a jury trial on all matters raised in his Complaint.

Dated this 28 day of December, 2020.


    Respectfully Submitted,

    Curtis L. Berry, Plaintiff


    By: <u>s/Martin J. Keenan</u>
      Martin J. Keenan, #12340
      Martin J. Keenan, LLC
      1735 W. 21st Street, Suite 200
      Wichita, KS 67203
      (620) 793-0347
      keenanlawyer@gmail.com
      Attorney for Plaintiff