## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CURTIS L. BERRY,                          )
                                          )
                    Plaintiff,            )        CIVIL ACTION
                                          )
v.                                        )        No. 20-1362-KHV
                                          )
AIRXCEL, INC.                             )
                    Defendant.            )
_____  )

### MEMORANDUM AND ORDER

Curtis Berry filed suit against Airxcel, Inc., alleging that defendant discriminated against him based on age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et. seq., and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44-1111 et. seq. Pretrial Order (Doc. #58) filed March 29, 2022 at 10. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #60) filed April 12, 2022. For reasons stated below, the Court sustains defendant's motion.

### Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625

F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2017).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

## Factual Background

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

Airxcel, Inc. designs and manufactures components for recreational vehicles ("RVs").  Its RV Products division manufactures rooftop air-conditioning units at a facility in Wichita, Kansas. In August of 1981, Airxcel hired plaintiff.  Plaintiff started in what is now known as the RV Products division and held various non-supervisory positions throughout his employment.  Since 2015, Robin Leach has served as President of RV Products and has been responsible for managing the overall operations of that division.  From late 2016 to 2020, until Airxcel promoted her to

Senior Vice President of Operations, Sandy Jessop was Vice President of Operations for RV Products.  Since June of 2013, Jodi McGregor has served as the Director of Finance and Human Resources, working to maximize operational efficiencies and quality control for RV Products.  Leach, Jessop and McGregor are members of the RV Products executive team.  From early 2017 to April of 2018, until she was promoted to Senior Manager of the Warehouse, Danielle Collins was the RV Products Warehouse Manager.

On March 25, 2015, plaintiff received the RV Products Employee Handbook.  Upon receipt, plaintiff acknowledged that he was responsible for reviewing and familiarizing himself with its contents.  The handbook contains multiple policies.  The harassment policy requires an employee to report to his supervisor or Human Resources an incident of harassment based on a protected class, including age.  The progressive discipline policy states that Airxcel will terminate an employee who receives three written corrective notices within a 12-month period.  The job bidding policy, which prohibits "bumping" based on seniority, states that job awards are determined based on qualifications, past quality of work, performance review scores, attendance, safety record and ability to work with others.  The reduction in force policy states that laid-off employees may stay on the "recall roster" for up to six months and may be recalled based on qualifications and performance review scores.  The break policy permits an employee in plaintiff's position to take one ten-minute break each half shift and one 30-minute meal break.

I.      **Plaintiff's Performance Evaluations And Transfer To The Warehouse**

On July 22, 2016, Girish Venugopal, plaintiff's manager, issued him a Step 1 Written Notice Corrective Action for being disrespectful and insubordinate.  On October 27, 2016, Kirk Gibson, plaintiff's immediate supervisor, conducted plaintiff's annual performance review.

Gibson rated plaintiff a "2.0" out of "3" possible points, meaning that plaintiff met expectations.[1]

On March 21, 2017, Janiece Strunk, plaintiff's co-worker, filed a complaint against him, alleging that he used profane language and acted unprofessionally towards her.  On August 3, 2017, Gibson conducted plaintiff's annual performance review and again gave him a rating of "2.0."  Gibson commented that plaintiff "need[ed] to do his job on hand and not argue with leadership."  On August 29, 2017, Venugopal issued plaintiff another Step 1 Written Notice Corrective Action for insubordination.

In February of 2018, Airxcel reassigned plaintiff to the position of Quality Control Technician for Assembly Line 3.  Plaintiff reported to Tim Klock and was responsible for ensuring that the assembled air conditioning units ran properly.  Jessop testified that while assigned to Assembly Line 3, plaintiff regularly strayed from his position on the line, causing interruptions and production delays.  Plaintiff testified that any delays in productivity related to product defects that had to be corrected, not him leaving his position on the line.

In early March of 2018, Airxcel created two new positions in RV Products to assist the Warehouse: Inventory Control/Shipping Quality Inspector on first and second shifts.  Jessop suggested to Collins that Collins offer the first shift position to plaintiff.  Collins believed that plaintiff was qualified and capable of performing the duties of the position and agreed that he would be a good candidate.  When Collins first approached plaintiff, he was reluctant but eventually took the position.  Christopher Volking served the same role on second shift.[2]

---

[1]      In RV Products, a ranking of "1.0" meant that the employee was operating below expectations, a ranking of "2.0" meant that the employee met expectations and a ranking of "3.0" meant that the employee was exceeding expectations.

[2]      The record does not include Volking's age.

## II.        Plaintiff's Warehouse Performance

On March 12, 2018, Airxcel transferred plaintiff to the warehouse, where he started reporting to Collins.  In his new role, plaintiff was primarily responsible for checking completed and packaged air conditioning units for leaks, writing reject tags for damaged or defective units and checking paperwork to verify that stock count was accurate.  Most of plaintiff's responsibilities required him to stay within the warehouse area while working.  Plaintiff testified that in contrast to other employees, Collins would not let him leave the warehouse, except with special permission. Plaintiff had to maintain a tow motor license to operate forklifts in the warehouse but testified that Collins prevented him from renewing his license.

To facilitate her oversight of the warehouse, Collins utilized three security cameras.  While monitoring the cameras, Collins observed plaintiff stray from his assigned work area and wander around the plant, chatting with others rather than performing his assigned duties.  Plaintiff testified that on one occasion, he left the warehouse with permission from Lisa Mitchell, the Warehouse Shipping Lead.  Jessop and Collins testified that plaintiff's "excessive breaks" occurred on more than one occasion.  On April 9, 2018, after giving plaintiff a verbal warning, Collins gave him a written "Warning for Conduct" related to repeated time clock violations.  At his annual review in 2018, Collins noted that plaintiff needed to be more productive but still gave him a rating of "2.0." On September 6, 2018, Collins gave plaintiff a Step 1 Written Notice Corrective Action for not performing his duties as required.

On July 13, 2019, Collins issued plaintiff a Step 2 Written Notice Corrective Action for leaving his assigned work area on several occasions.  Collins observed plaintiff spending "prolonged periods of time" in the single-stall restroom at the back of the warehouse.  Plaintiff testified that he was performing stretching exercises for his back in the restroom.  Collins testified

that she had instructed plaintiff numerous times to consult with the plant safety officer to find a more suitable place to stretch.  Though the progressive discipline policy allowed Collins to suspend plaintiff, she decided to only issue the written action.

In August of 2019, plaintiff applied for a position as Line Lead on third shift.  On August 27, 2019, Kris Kohr, a Human Resources manager, informed plaintiff that he did not receive the position.  Collins was not involved in this decision.  On October 10, 2019, Collins gave plaintiff a second Step 2 Written Notice Corrective Action for not following break policy.  The notice stated that plaintiff took twice the allotted break time on three separate occasions over two shifts. Plaintiff testified that Collins allowed younger employees to take breaks without any discipline. At plaintiff's annual performance review in 2019, Collins rated plaintiff as a "1.5," meaning that plaintiff was operating below expectations.

During the time that plaintiff reported to Collins, Collins oversaw numerous employees.[3] Over half of the employees assigned to Collins were 40 years old or older.  Collins testified that plaintiff frequently referred to himself as an "old man."  Plaintiff testified that he never called himself an "old man" and that once, in 2000, Collins called him an "old man."

While working at Airxcel, plaintiff never filed a formal complaint alleging that Collins or Klock discriminated against him because of age.

### III.    Plaintiff's Layoff From Airxcel

In early 2020, RV Products employed approximately 400 employees at its Wichita manufacturing facility.  In early March of 2020, as the COVID-19 pandemic started sweeping the United States, the RV Products executive team created a contingency plan for a potential government shutdown.  Collins was not a member of the executive team.  The team conducted a

---

[3]       The exact number of employees is not in the record.

reduction in force study, which caused it to create an employee layoff ranking system.  The system placed all employees in one of nine boxes based on the employee's performance potential and demonstrated performance based on his or her most recent performance review.[4]   Airxcel measured performance potential based on the employee's historical performance review scores and disciplinary history.  Airxcel ranked plaintiff and 13 other RV Products employees, ranging in age from 22 to 64, as "Under Performer[s]," the lowest of the nine boxes.  Plaintiff testified that based on his work record, this ranking was illogical.

On March 24, 2020, Airxcel announced a temporary shutdown of the Wichita facility due to the COVID-19 pandemic.  Airxcel stated that it would be furloughing hundreds of employees. Airxcel based furlough, and eventual layoff and recall decisions, on three factors: (1) the employee's overall performance rating; (2) the job duties of the position; and (3) seniority, if all other factors were equal.

Airxcel expected the initial shutdown to be from March 25 to April 7 or potentially longer. While the facility was shut down, the executive team continued to analyze operational efficiencies and personnel attributes to make the facility more efficient upon re-opening.  During this analysis, the team determined that the Inventory Control/Shipping Quality Inspector positions on the first and second shifts (i.e., plaintiff's position and that of Volking) were unnecessary and could be permanently eliminated.  When the executive team eliminated the positions, the shift Lead and employees working in Quality Assurance absorbed plaintiff's and Volking's duties.  Although the

---

[4]       The nine boxes were (1) Consistent Star (high performance/high potential); (2) Rising Star (medium performance/high potential); (3) Current Star (high performance/medium potential);  (4) Enigma  (low  performance/high  potential);  (5) Solid  Contributor  (medium performance/medium potential); (6) Expert (high performance/low potential); (7) Questionable Fit (low  performance/medium  potential);  (8) Specialist  (medium  performance/low  potential);  and (9) Under Performer (low performance/low potential).

executive team asked Collins for input about potential warehouse support roles that could be eliminated to improve efficiency, the decision to eliminate the positions ultimately came from the executive team.

On April 10, 2020, Airxcel sent plaintiff written notice that it was reclassifying his furlough as a permanent layoff due to a reduction in force.  At the time, plaintiff was over the age of 40.  The notice expressly stated that Airxcel considered business necessity, expertise and past performance, as well as seniority, in making this decision.  Plaintiff testified that seniority should have prevented his discharge.  During this time, Airxcel also permanently laid off Volking.

Between April and June of 2020, Airxcel started recalling many furloughed employees.  Of the recalled employees, 20 were the same age or older than plaintiff.  In total, RV Products laid off 58 employees because of the reduction in force: 16 employees were 40 or older, and 42 were under the age of 40.[5]  Of the employees Airxcel laid off, 70 per cent were under the age of 40.

The 2015 handbook had a reduction in force policy which stated that employees could remain on a recall roster for up to six months.  Plaintiff never qualified for recall because of his "Under Performer" ranking and his performance review from 2019.  After Airxcel informed plaintiff of his permanent layoff, he did not apply for any vacant positions at Airxcel or reach out to the Human Resources department to discuss any potential employment opportunities.

## IV.    Procedural History

On September 10, 2020, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  On September 30, 2020, it issued a Notice of Right to Sue.

---

[5]    The record does not state the age demographics of all employees working in RV Products.

## Analysis

Plaintiff asserts that defendant discriminated against him in violation of the ADEA, 29 U.S.C. § 623 et. seq., and the KADEA, K.S.A. § 44-1111 et. seq. Specifically, plaintiff argues that, but for his age (61), Airxcel would not have instituted a reduction in force reorganization plan and terminated his employment. Plaintiff alleges that defendant used COVID-19 as a "ruse" to enact a reorganization plan to get rid of older employees.

Defendant asserts that it is entitled to summary judgment on plaintiff's age discrimination claims under the ADEA and the KADEA because (1) plaintiff cannot establish a prima facie case of discrimination and (2) defendant had a non-discriminatory reason for its actions.

Age discrimination claims under the KADEA are evaluated using the same criteria used to evaluate claims under its federal counterpart, the ADEA. Linnebur v. United Tel. Ass'n, Inc., No. 10-1379-RDR, 2013 WL 3815865, at *3 (D. Kan. July 22, 2013). The ADEA protects employees over the age of 40 and prohibits employers from discriminating based on age. 29 U.S.C. § 623. To succeed on a claim of age discrimination, plaintiff can either provide direct evidence of discrimination or follow the burden-shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278–79 (10th Cir. 2010). Circumstantial proof is often offered in cases alleging age discrimination because direct evidence of discrimination is rare. Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994). Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1201–02 (10th Cir. 2008). Once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If defendant does so, the burden shifts back to plaintiff to show that

defendant's reason was pretextual.  Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010).

## I.      Prima Facie Case

In a reduction in force case, the elements of a prima facie case necessarily differ from those in a replacement case, promotion case, a failure to hire case or a typical termination case.  Branson v. Price River Coal Co., 627 F. Supp. 1324, 1329 (D. Utah 1986), aff'd, 853 F.2d 768 (10th Cir. 1988).  Typically, a prima facie case of age discrimination requires plaintiff to show that defendant replaced him with a younger person, although not necessarily one less than 40 years of age. Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008).   In reduction in force cases, however, a plaintiff "is simply laid off and thus incapable of proving actual replacement by a younger employee." Branson, 853 F.2d at 771.  Consequently, the Tenth Circuit has modified the prima facie case of age discrimination in a reduction in force context, requiring a plaintiff to show that (1) he is in a protected age group—40 or older; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence that the employer intended to discriminate against him in reaching its reduction in force decision.  Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006).  This fourth element may be established "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." Id.; see also Branson, 853 F.2d at 771 (evidence that employer fired qualified older employees but retained younger employers in similar positions creates rebuttable presumption of discriminatory intent).

Defendant argues that the record contains no evidence that it intended to discriminate or that it treated plaintiff less favorably than younger employees during the reduction in force. Defendant argues that the undisputed facts show that it eliminated plaintiff's position as part of a justified restructuring plan, that plaintiff has not cited any facts to the contrary and that plaintiff

cannot show that defendant called back younger employees disproportionately to older employees.

Even construed in the light most favorable to plaintiff, the record in this case does not support an inference that defendant treated younger employees more favorably than older employees. Plaintiff argues that his seniority should have been enough to prevent his classification as an "Under Performer" and avoid permanent layoff. Plaintiff argues that no jury would believe that an employee "suddenly break[s] bad" and would be worthy of permanent layoff. Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Doc. #67) filed May 27, 2022 at 16.

It is undisputed that defendant's furlough policy did not have "strict seniority rights." The policy stated that while defendant would consider seniority when determining which employees to lay off, it would mainly consider business necessity, expertise and past performance. Defendant did not change its seniority policies when making furlough decisions. Defendant's handbook explicitly contained a job bidding policy, which prohibited bumping based on seniority. See Pippin, 440 F.3d at 1201 (corporate restructuring, performance-based evaluations, retention decisions based on needed skills and recruiting concerns all reasonable business considerations). Although an employee may create an inference of discrimination by arguing that his termination did not accord with the neutral reduction in force criteria, plaintiff does not point to such evidence in this case. Beaird v. Seagate Tech. Inc., 145 F.3d 1159, 1168 (10th Cir. 1998). The record contains no evidence that defendant disproportionately classified more senior employees as "Under Performers." In fact, the record contains evidence that of the 58 employees that Airxcel terminated in RV Products, over 70 per cent were under the age of 40.

Plaintiff's seniority, standing alone, does not create a genuine issue of material fact whether defendant treated younger employees more favorably than older employees. See Williams v. Gen. Motors Corp., 656 F.2d 120, 130 n.17 (5th Cir. 1981) ("[S]eniority and age discrimination are

unrelated."). Accordingly, plaintiff has not established a genuine issue of material fact with regard to intent to discriminate. Defendant is entitled to judgment as a matter of law because plaintiff has failed to establish a prima facie case under the ADEA and KADEA.[6]

## II.    Pretext

Defendant argues that it had a legitimate, non-discriminatory basis for the reduction in force and plaintiff's subsequent termination: the COVID-19 pandemic caused it to conduct efficiency analyses, resulting in a reduction in force, the elimination of plaintiff's position and the reassignment of plaintiff's previous duties to other positions within RV Products. Plaintiff does not dispute that defendant had a legitimate basis for the initial shutdown in March of 2020, which resulted in his initial furlough. He argues that the pandemic increased defendant's demand, however, so the reduction in force became discriminatory. In support, plaintiff cites two news articles published in the Wichita Eagle in July of 2020 and June of 2021.

Defendant need only raise a genuine issue of material fact as to the legitimate, non-

---

[6]    "Plaintiff's Statement of Additional Uncontroverted Facts" contains numerous "facts" without citing any evidence, and the record does not appear to contain evidence which could support these statements. See Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Doc. #67), ¶¶ 69, 80, 82–85, 88. Specifically relating to Airxcel's intent to discriminate based on age, plaintiff states that of the 14 people classified as "Under Performers," defendant permanently laid off nine employees aged 23, 24, 25, 26, 36, 38, 59, 61 and 66. See id., ¶ 85. Plaintiff argues that this data serves as evidence of discriminatory intent. As mentioned above, however, the uncontroverted facts show that Airxcel laid off 58 employees in RV Products in 2020 because of the COVID-19 shutdown and the subsequent reorganization plan and that over 70 per cent of the employees laid off were under the age of 40. Record (Doc. #61-4 Declaration of Jodi McGregor), ¶ 16; Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Doc. #67), ¶ 57 (uncontested fact).

Even accepting plaintiff's statements as true, six out of the nine employees were under the age of 40 (67 per cent). See Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1403 (10th Cir. 1988) (inference of age discrimination not met where of 18 employees terminated, over 60 per cent under age 40). Even if supported by the record, this statistic is insufficient evidence of age discrimination. See id. ("Statistics generally are not of significance in age discrimination cases unless the disparities in treatment are quite large.") (internal citations omitted).

discriminatory reason and need not prove its legitimacy by a preponderance of the evidence. Branson, 627 F. Supp. at 1329. Courts have recognized that an economic downturn in a given industry is a legitimate, non-discriminatory reason for a reduction in force and that a reduction in force is a legitimate, non-discriminatory reason for termination of an employee. Pippin, 440 F.3d at 1186; Torry v. Northrop Grumman Corp., 399 F.3d 876, 878 (7th Cir. 2005). Though plaintiff argues that the COVID-19 pandemic caused defendant's demand to increase in June of 2021, defendant has articulated a legitimate, non-discriminatory reason for the reduction in force in March of 2020 and plaintiff's subsequent termination. See Kawahara v. Guar. Bank & Tr., No. 17-CV-02979-REB-KMT, 2019 WL 8370803, at *3 (D. Colo. Aug. 13, 2019), aff'd, 835 F. App'x 386 (10th Cir. 2020) (citing Beaird, 145 F.3d at 1168) (implementation of reduction in force "constitutes a legitimate, facially nondiscriminatory reason" for employee termination). Therefore, the burden shifts back to plaintiff to show that defendant's stated reasons were pretextual. See Wilkerson, 606 F.3d at 1267.

Because defendant has met its burden, the presumption of discrimination established by the prima facie showing "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). To survive summary judgment, plaintiff must establish by a preponderance of the evidence that the proffered reasons were not the true reasons for the employment decision. Aramburu v. Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997). Plaintiff may show pretext by establishing that a discriminatory reason more likely motivated defendant or that its stated reasons are unworthy of credence. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the

employer did not act for the asserted non-discriminatory reasons." Sanders v. Sw. Bell Tel. L.P., 544 F.3d 1101, 1106 (10th Cir. 2008), cert denied, 130 S. Ct. 69 (2009). While "[t]his burden is not onerous . . . it is not empty or perfunctory." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323–24 (10th Cir. 1997) (quotation marks and citation omitted). Plaintiff typically makes a showing of pretext in a reduction in force context by showing that (1) his termination does not accord with defendant's reduction in force criteria; (2) defendant deliberately falsified the reduction in force criteria to terminate him; or (3) defendant's reduction in force generally was pretextual. Kawahara, 835 F. App'x at 389. More specifically, evidence of pretext may include the following: prior treatment of plaintiff; the employer's policy and practice of employment regarding age (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and the use of subjective criteria. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).

Plaintiff asserts that defendant's stated reasons for conducting the reduction in force study and subsequently eliminating his position were a pretext for age discrimination. Plaintiff argues that he has presented evidence that (1) despite his seniority, defendant placed him in the ninth box when assessing his job performance and job potential; (2) defendant increased its workforce in July of 2020; and (3) defendant displayed ageist animus because the reduction in force targeted older employees.

In support of his argument, plaintiff cites an unpublished Tenth Circuit opinion: Kawahara v. Guar. Bank & Tr., 835 F. App'x 386 (10th Cir. 2020). In Kawahara, plaintiff was a 58-year-old woman who worked for her employer, Guaranty Bank, for just under ten years. Id. at 387. When Guaranty Bank merged with Home State Bank, it developed a reduction in force plan to correct overlaps in staffing and expenses. Id. Subsequently, Guaranty Bank laid off 65 employees,

including plaintiff, and she filed an age discrimination and retaliation suit.  Id.  The district court assumed *arguendo* that plaintiff could establish a prima facie case of age discrimination, so the Tenth Circuit only analyzed whether plaintiff established a genuine issue of material fact relating to pretext.  Id. at 388–89.  The Tenth Circuit affirmed the grant of summary judgment for defendant, holding that plaintiff did not meet her burden of establishing pretext.  Id. at 389. Specifically, the Tenth Circuit held that plaintiff did not present evidence that (1) her termination deviated from defendant's reduction in force criteria; (2) defendant deliberately falsified the reduction in force criteria; or (3) the reduction in force generally was pretextual.  Id.

Plaintiff relies on Kawahara to support his assertion that a reduction in force "must not be pretextual, and must not be falsified to terminate a person."  See Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Doc. #67) at 18.  Plaintiff argues that defendant's reduction in force study was unusual and therefore serves as evidence of pretext.  Id.  Just as the Tenth Circuit found in Kawahara, however, plaintiff has cited no record evidence that (1) his termination deviated from the reduction in force criteria; (2) defendant falsified the reduction in force criteria to terminate him; or (3) the reduction in force was generally pretextual.  As explained above, defendant did not have "strict seniority rights" and did not change its seniority policy when it made furlough decisions relative to plaintiff.  Plaintiff does not present evidence that his termination deviated from the reduction in force criteria or that defendant falsified the criteria.  To survive summary judgment, plaintiff therefore is left to show that the reduction in force was generally pretextual.

Plaintiff has not met his burden.  Other than Collins's one comment about age in 2000, the record contains no evidence that defendant unlawfully discriminated against plaintiff based on age. Collins was not on the executive team which conducted the reduction in force study and decided

to eliminate plaintiff's position. Furthermore, defendant eliminated not just plaintiff's employment, but the employment of the person who held the same position on the second shift. Plaintiff presents no evidence that defendant re-hired Volking,[7] that defendant hired someone else to serve in either position or that defendant used younger workers to take over the duties of either position. Although plaintiff argues that the reorganization plan was a "ruse" to get rid of older employees, the evidence shows that defendant terminated significantly more employees under the age of 40 than over the age of 40. Plaintiff has not presented evidence that the termination of employees over the age of 40 was disproportionate to the age makeup of RV Products or the company as a whole.

Under the ADEA, a plaintiff cannot meet his burden just by proof that a reduction in force was unnecessary. He must create a genuine issue of material fact whether a discriminatory reason more likely motivated defendant or that defendant's stated reasons are unworthy of credence. See Rea, 29 F.3d at 1455. Even looking at the record in the light most favorable to plaintiff, the record shows that plaintiff's performance declined over his last four years of employment, defendant conducted a reduction in force study to analyze potential efficiency changes in response to the COVID-19 pandemic and defendant eliminated plaintiff's position without any intent to discriminate based on age. Furthermore, defendant terminated 58 employees from RV Products, and over 70 per cent of them were under age 40. Plaintiff has not met his burden of pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's legitimate, non-discriminatory reason for executing a reduction in force, eliminating plaintiff's job and permanently re-assigning his duties. See Sanders, 544 F.3d at 1106. The Court therefore

---

[7]        The record does not include Volking's age.

sustains defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment

(Doc. #60) filed April 12, 2022 is **SUSTAINED.**

Dated this 26th day of July, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge